UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROCHESTER DRUG CO-OPERATIVE, INC.,

                    PLAINTIFF,

        v.                                                      6:20-CV-6025 (EAW)

HISCOX INSURANCE COMPANY, INC.,
                    DEFENDANT.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

HARTER SECREST & EMERY LLP
Patrick M. Tomovic
Lauren R. Mendolera
*Attorneys for Plaintiffs*
50 Fountain Plaza, Suite 1000
Buffalo, New York 14202
Telephone: (716) 853-1616

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

FACTS ............................................................................................................... 2

ARGUMENT  ROCHESTER DRUG CO-OP IS ENTITLED TO A PRELIMINARY
INJUNCTION .................................................................................................... 5

     I.     Rochester Drug Co-op Is Likely To Suffer Irreparable Harm Absent
          INterim Relief ........................................................................................ 6

          A.     ███████████████████████████████████████
                 ███████ .......................................................... 6

          B.     ██████████████████████████ ................................. 11

     II.     Rochester Drug Co-Op Is Likely to Succeed on the Merits of Its Claim ............ 12

          A.     The Final Adjudication Exclusion cannot apply because there has
                 been no "final adjudication." .................................................... 13

          B.     The Final Adjudication Exclusion also cannot apply because the
                 NY Opioid Litigations would arise with or without deliberate
                 criminal or fraudulent acts. ...................................................... 18

          C.     Hiscox chose not to define "final adjudication" or "arising out of,"
                 and any ambiguity must be construed in favor of Rochester Drug
                 Co-Op ...................................................................................... 20

     III.     At a Minimum, Rochester Drug Co-Op Has Presented Sufficiently Serious
           Questions as to the Merits and a Balance of Hardships Tip in its Favor. ............. 21

     IV.     Granting the Motion is in the Public Interest. ....................................................... 22

     V.     The Court Should Require No Bond or, in the Alternative, a Minimal
          Bond. ..................................................................................................... 23

CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Able v. United States*,
    44 F.3d 128 (2d Cir. 1995)....................................................................................12

*Alexander Mfg. v. Ill. Union Ins. Co.*,
    666 F. Supp. 2d 1185 (D. Or. 2009) ....................................................................21

*Am. Auto. Ins. Co. v. Advest, Inc.*,
    08 Civ. 6488, 2009 U.S. Dist. LEXIS 101572 (S.D.N.Y. Oct. 28, 2009) ............17

*Am. Guar. & Liab. Ins. Co. v. Moskowitz*,
    19 Misc. 3d 548................................................................................................17

*Am. Guar. Liab. Ins. Co. v. Hoeffner*,
    Civil Action No. H-08-1181, 2009 U.S. Dist. LEXIS 3047 (S.D. Tex. Jan. 16,
    2009) ..............................................................................................................16

*B&R Consol. L.L.C. v. Zurich Am. Ins. Co.*,
    2011 N.Y. Misc. LEXIS 3014 (N.Y. Supt. Ct. June 22, 2011) ..............................16

*Bank of Am. v. Yi*,
    294 F. Supp. 3d 62 (W.D.N.Y. 2018) ............................................................12, 22

*Beazley Ins. Co. v. Ace Am. Am. Ins. Co.*,
    197 F. Supp. 3d 616 (S.D.N.Y. 2016)..................................................................18

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
    784 F.3d 887 (2d Cir. 2015)................................................................................22

*Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*,
    36 A.D.3d 17 (1st Dep't 2006) ............................................................................18

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
    511 F. 3d 535 (6th Cir. 2007) ..............................................................................22

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*,
    598 F.3d 30 (2d Cir. 2010)..................................................................................12

*Copart Indus., Inc. v. Consolidated Edison Co.*,
    41 N.Y.2d 564 (N.Y. 1977) ................................................................................19

*DeWitt Stern Grp., Inc. v. Eisenberg*,
    13 Civ. 3060 (RWS),2013 U.S. Dist. LEXIS 78598 (S.D.N.Y. June 4, 2013) ......23

*Doctor's Assocs. v. Distajo*,
   107 F.3d 126 (2d Cir. 1997)...........................................................................23

*Elmaliach v. Bank of China Ltd.*,
   110 A.D.3d 192 (1st Dept 2013)....................................................................19

*Emons Indus., Inc. v. Liberty Mut. Ins. Co.*,
   749 F. Supp. 1289 (S.D.N.Y. 1990)................................................................9

*Fidelity Nat'l Title Ins. Co. v. Maxum Indem. Co.*,
   Civil Action No. 16-1360, 2017 U.S. Dist. LEXIS 147133 (E.D. Pa. Sept. 12,
   2017) ...............................................................................................................17

*First Mercury Ins. Co. v. Law Office of Kenneth B. Schwartz*,
   No. CV 17-1763, 2019 U.S. Dist. LEXIS 35210 (E.D.N.Y. Mar. 1, 2019) .....................11, 13

*Freedom Specialty Ins. Co. v. Platinum Mgt. (NY), LLC*,
   2017 N.Y. Misc. LEXIS 5165 (N.Y. Sup. Ct. Dec. 21, 2017)............................7, 10

*Gov't of India v. Cook Indus., Inc.*,
   569 F.2d 737 (2d Cir. 1978)..............................................................................9

*Great Am. Ins. Co. v. Gross*,
   No. 05-cv-159, 2005 U.S. Dist. LEXIS 8003 (E.D. Va. May 3, 2005) ...................................6

*In re Boston Reg'l Med'l Ctr., Inc.*,
   285 B.R. 87 (Bankr. D. Mass. 2002) ...............................................................7, 10

*In re CyberMedica, Inc.*,
   280 B.R. 12 (Bankr. D. Mass. 2002) ..................................................................7

*In re WorldCom Inc., Sec. Litig.*,
   354 F. Supp. 2d 455 (S.D.N.Y. 2005)................................................................7

*John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*,
   588 F.2d 24 (2d Cir. 1978)..............................................................................11

*Juergensen Def. Corp. v. Carleton Techs., Inc.*,
   08-CV-959A, 2010 U.S. Dist. LEXIS 65540 (W.D.N.Y. June 21, 2010)............................22

*Liberty Surplus Ins. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   67 A.D.3d 420 (1st Dep't 2009) .......................................................................18

*Lifespan Corp. v. Nat'l Union Fire Ins. Co.*,
   59 F. Supp. 3d 427 (D.R.I. 2014) ....................................................................16

*Mostow v. State Farm Ins. Co.*,
   88 N.Y.2d 321 (N.Y. 1996) .............................................................................20

*Nu-Way Envtl. v. Planet Ins.*,
  95 Civ. 573 (HB), 1997 U.S. Dist. LEXIS 11884 ...................................................23

*Pendergest-Holt v. Certain Underwriters at Lloyd's of London*,
  600 F.3d 562 (5th Cir. 2010) ...................................................................................13

*Phila. Indemn. Ins. Co. v. Stazac Mgmt., Inc.*,
  3:16-cv-369-J-34MCR, 2017 U.S. Dist. LEXIS 45397 (M.D. Fla. Jan. 31,
  2017) .......................................................................................................................16

*Red Earth LLC v. United States*,
  657 F.3d 138 (2d Cir. 2011)........................................................................................5

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*,
  754 F. Supp. 2d 616 (S.D.N.Y. 2010).......................................................................22

*Roberts v. Babkiewicz*,
  582 F.3d 418 (2d Cir. 2009)......................................................................................14

*Scottsdale Indem. Co. v. Beckerman*,
  120 A.D.3d 1215 (2d Dep't 2014) ............................................................................18

*Seaboard Sur. Co. v. Gillette Co.*,
  64 N.Y.2d 304 (1984) ...............................................................................................20

*Sony Computer Entm't Am., Inc. v. Am. Home Assur. Co.*,
  532 F.3d 1007 (9th Cir. 2008) ..................................................................................17

*Steadfast Ins. Co. v. Sentinel Real Estate Corp.*,
  283 A.D.2d 44 (1st Dep't 2001) ...............................................................................18

*Texaco Inv. v. Pennzoil Co.*,
  784 F.2d 1133 (2d Cir. 1986).....................................................................................11

*United States v. Fokker Servs. BV*,
  818 F.3d 733 (D.C. Cir. 2016) ........................................................................14, 15, 16

*United States v. HSBC USA, N.A.*,
  863 F.3d 125 (2d Cir. 2017)......................................................................................14

*United States v. Toyota Motor Corp.*,
  278 F. Supp. 3d 811 (S.D.N.Y. 2017).......................................................................14

*United States v. Weissman*,
  94-cr-760, 1997 U.S. Dist. LEXIS 8540 (S.D.N.Y. June 13, 1997)........................13

*USA Network v. Jones Intercable, Inc.*,
  704 F. Supp. 488 (S.D.N.Y. 1989) ...........................................................................12

iv

*Wojtunik v. Kealy*,
 No. CV-03-2161-PHX-PGR, 2011 U.S. Dist. LEXIS 36229 (D. Az. Mar. 31,
 2011) ...................................................................................................................13

*XL Specialty Ins. Co. v. Level Global Investors, L.P.*,
 874 F. Supp. 2d 263 (S.D.N.Y. 2012) ...........................................................6, 9, 21

*Xtreme Prot. Servs., LLC v. Steadfast Ins. Co.*,
 2019 Ill. App. LEXIS 301 (Ill. App. Ct. May 3, 2019) ........................................17

*Yale Club of New York City, Inc. v. Reliance Ins. Co. in Liquidation*,
 55 A.D.3d 43 (1st Dep't 2008), *aff'd* 12 N.Y.3d 725 (N.Y. 2009).........................20

**OTHER AUTHORITIES**

*Black's Law Dictionary* (10th ed. 2014).................................................................13

Plaintiff Rochester Drug Co-Operative, Inc. ("Rochester Drug Co-Op" or "the Company") respectfully submits this memorandum of law in support of its Motion for Preliminary Injunction to enjoin Defendant Hiscox Insurance Company, Inc. ("Hiscox") from breaching its duty to advance defense costs to Rochester Drug Co-Op for a trial commencing on March 20, 2020, including by requiring Hiscox to advance funds to pay attorneys' fees and expert-defense witnesses who have expert rebuttal reports due in less than two weeks, on February 3, 2020.

### PRELIMINARY STATEMENT

Rochester Drug Co-Op faces a March 20 trial on claims that, according to the New York Attorney General, could put the Company "out of business" and "wipe[ it] off the map."  The stakes could not be higher for this critical, 183-person local employer that plays a key role in fostering competition in the drug-distribution space, helping to keep independent pharmacies competitive.

Threats like these are precisely why companies purchase insurance policies that cover defense costs.  Yet Rochester Drug Co-Op's insurer, Hiscox, has wrongfully refused to honor its commitments to pay for the Company's defense.  This is quintessential irreparable harm.

Hiscox is taking advantage of Rochester Drug Co-Op.  Initially, when provided with notice of these litigations, Hiscox agreed that its insurance policy provided coverage for the suits.  But months later, Hiscox took a gamble: it disclaimed coverage based on a clearly inapplicable policy

exclusion.  The strategy, it appears, was to refuse to provide insurance coverage to an

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████ The purpose of this

motion is to give Rochester Drug Co-Op a fighting chance at righting the wrongs caused by

Hiscox's failure to honor its contractual obligations.

**FACTS**

The facts pertinent to this application are set forth in the declaration of David A. Shaiman,

dated January 20, 2020 (the "Shaiman Decl."), the declaration of John Kinney, dated January 20,

2020 (the "Kinney Decl."), and the declaration of Patrick Tomovic, dated January 20, 2020 (the

"Tomovic Decl.").[1]  They are summarized below.

Rochester Drug Co-Op is a drug-distribution cooperative, owned and run for the benefit

of independent pharmacies.  *See* Kinney Decl. ¶ 3.  The Office of the New York Attorney General

recently acknowledged that the Company "serves a public function and interest" by providing

"competition in the [drug] distribution industry that is otherwise dominated by Cardinal,

McKesson, and Amerisource Bergen."  Shaiman Decl. Ex. A.  The Company is headquartered in

Rochester, New York.  *See* Kinney Decl. ¶ 4.  Of its 183 employees, 97 live and work in the

Rochester area.  *See id.*

In March 2017, Rochester Drug Co-Op purchased a Private Company Management

Liability insurance policy from Hiscox.  *See* Tomovic Decl. Ex. 1 at Ex. A (the "Policy").  That

coverage includes up to $6,000,000 in defense costs to defend the Company against covered

claims.  *See id*.  The Policy issued by Hiscox includes "wrongful acts" coverage.  In particular, the

---

[1] All capitalized terms not defined herein shall have the definitions set forth in these supporting
affidavits and the complaint filed in this action (Dkt. 1).

Policy promises to pay all defense costs arising from litigation "for any actual or alleged **Wrongful Act**," with "Wrongful Act" defined to include "any breach of duty, neglect, error, misstatement, misleading statement, omission, or act." *See* Policy, D&O Coverage Part, Clause II. The Policy contains an exclusion for "any Claim . . . arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act . . . ***if any final adjudication establishes*** that such deliberate criminal or deliberate fraudulent act . . . was committed." *See* Policy, D&O Coverage Part, Clause IV(A)(iv) (the "Final Adjudication Exclusion") (emphasis added). Unlike other similar policy exclusions (*see infra* at II.A.), the Final Adjudication Exclusion does not extend to both "a final adjudication or an admission." On the contrary, the Policy's Final Adjudication Exclusion nowhere identifies "admissions" as a trigger, but is instead limited to "final adjudications" alone.

Over the last two years, Rochester Drug Co-Op has been sued, alongside other drug distributors, in a proliferation of litigation in both New York and federal courts. *See* Shaiman Decl. ¶ 6. That litigation includes more than thirty-one actions covered by the Policy. *See* Tomovic Decl. ¶ 26. The Company tendered its defense to Hiscox, seeking coverage under the Policy. *See* Tomovic Decl. ¶ 28. In response, on March 22, 2018, Hiscox agreed, subject to a general reservation of rights, that the Policy covered the litigation. *See* Tomovic Decl. ¶ 29.

But Hiscox changed its mind following Rochester Drug Co-Op's admissions in two settlements with the United States. The first was a deferred prosecution agreement entered into on April 22, 2019. *See* Tomovic Decl. Ex. 2. (the "Deferred Prosecution Agreement" or "DPA"). As part of the Deferred Prosecution Agreement, the Company waived indictment, pleaded *not guilty*, and consented to the deferral of any prosecution on a three-count information. *See* DPA ¶¶ 1, 12; Tomovic Decl. Ex. 3, Docket at Minute Entry, Apr. 23, 2019; Tomovic Decl. ¶ 21. Although the

3

Deferred Prosecution Agreement included significant admissions of wrongdoing by the Company, *see* DPA at Ex. C, it provided for the dismissal of the information with prejudice after five years' compliance with the terms of the agreement, *see* DPA ¶ 13 ("[I]f RDC is in compliance with all of its obligations under this Agreement, the Office will, within thirty (30) days after the expiration of the period of deferral . . . seek dismissal with prejudice as to RDC of the Information filed against RDC pursuant to this Agreement.").  The second agreement, filed April 23, 2019, was a stipulated civil settlement which likewise contained admissions of wrongdoing.  *See* Tomovic Decl. Ex. 4. (the "Stipulation").  And like the Deferred Prosecution Agreement, the Stipulation provides that, if the Company complies with its terms, the Company will obtain a release.  *See* Stipulation ¶ 9; Tomovic Decl. ¶ 25.  Moreover, it provides that a judgment would be filed only "[i]n the event of an Uncured Default" of the Company's settlement payments.  *See* Stipulation ¶ 4.  Neither the Deferred Prosecution Agreement nor the Stipulation followed any judicial adjudication of wrongdoing, and neither has triggered any judgment.

Nevertheless, by letter dated September 13, 2019, Hiscox cited the admissions in the Deferred Prosecution Agreement and Stipulation as grounds for disclaiming coverage.  *See* Complaint at Ex. D.  Even though neither agreement followed any judicial findings, and although neither was tied to any judgment (final or otherwise), Hiscox claimed that those agreements triggered the Final Adjudication Exclusion.  *See* Complaint at Ex. D.   The Company, through counsel, explained to Hiscox that it misconstrued the Deferred Prosecution Agreement and Stipulation.  *See* Tomovic Decl. ¶¶ 32-33.   But Hiscox, aware that the Company was stuck defending itself in an overwhelming thirty-plus litigations, refused to reconsider.  *See* Tomovic Decl. ¶ 34.

Now, Rochester Drug Co-Op finds itself in a desperate position.  The judge overseeing three significant cases—one brought by Nassau County, one brought by Suffolk County, and one brought by the State of New York—has set a trial date of March 20, 2020 for a determination of liability on those plaintiffs' public nuisance claims.  *See* Shaiman Decl. ¶ 11.  ████████████

████████████████████████████████ ████████████████

██████    *See id.* ¶ 15.  ████████████████████████

████████████████████████████ *See* Kinney Decl. ¶¶ 12-18.  ██████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████  *See* Shaiman Decl. Ex. A.

Rochester Drug Co-Op moves this Court now for a preliminary injunction enjoining Hiscox from refusing to fund the Company's defense through the end of the March 20 trial

### ARGUMENT

### ROCHESTER DRUG CO-OP IS ENTITLED TO A PRELIMINARY INJUNCTION

A plaintiff seeking a preliminary injunction must demonstrate that it is likely to suffer irreparable injury in the absence of an injunction. *Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011).  The plaintiff must also demonstrate "either a likelihood of success on the merits or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor."  *Id.* (citation omitted). Finally, the court must ensure that the public's interest weighs in favor of granting an injunction. *Id.*

Rochester Drug Co-Op readily meets these requirements.

I.     **ROCHESTER DRUG CO-OP IS LIKELY TO SUFFER IRREPARABLE HARM ABSENT INTERIM RELIEF**

"To satisfy the irreparable harm requirement, [a movant] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *XL Specialty Ins. Co. v. Level Global Investors, L.P.*, 874 F. Supp. 2d 263, 270 (S.D.N.Y. 2012) (citations omitted).

A.      Hiscox's refusal to honor its commitment to advance these costs threatens immediate irreparable harm.

This harm is well-established by precedent. As a general matter, "[t]he failure to receive defense costs under" an insurance "policy at the time they are incurred constitutes an immediate and direct injury sufficient to satisfy the irreparable harm requirement." *XL Specialty Ins. Co.,* 874 F. Supp. 2d at 272; *see also Great Am. Ins. Co. v. Gross*, No. 05-cv-159, 2005 U.S. Dist. LEXIS 8003, at *13-14 (E.D. Va. May 3, 2005) (granting preliminary injunction compelling insurer to resume advancement of defense costs because insured faced prospect of "massive civil liability due to . . . complex, fact intensive actions" and "[t]he practical effect of Plaintiff's failure to advance costs of defense to Moving Defendants would be to cause [insureds' counsel] to withdraw"). This is because "the ability to mount a successful defense requires competent and diligent representation" and the "impact of an adverse judgment will have ramifications beyond the money that will necessarily be involved. There is damage to reputation, the stress of litigation,

and the risk of financial ruin—each of which is an intangible but very real burden."  *In re WorldCom Inc., Sec. Litig.*, 354 F. Supp. 2d 455, 469 (S.D.N.Y. 2005).  "If disbursement of defense costs were to await full resolution of all rights of the parties to the insurance proceeds, then the policy proceeds would provide financial remuneration but fail in their purpose of providing a legal defense."  *In re Boston Reg'l Med'l Ctr., Inc.*, 285 B.R. 87, 97 (Bankr. D. Mass. 2002); *see also In re CyberMedica, Inc.*, 280 B.R. 12, 18 (Bankr. D. Mass. 2002) ("[The insureds] are in need *now* of their contractual right to payment of defense costs and may be harmed if disbursements are not presently made to fund their defense") (emphasis in original).



*In re Boston Reg'l Med'l Ctr., Inc.*, 285 B.R. at 94, 96; *see also Freedom Specialty Ins. Co. v. Platinum Mgt. (NY), LLC*, 2017 N.Y. Misc. LEXIS 5165 (N.Y. Sup. Ct. Dec. 21, 2017) ██████

*In re Boston Reg'l Med'l Ctr.*, 285 B.R. at 96-97

These are precisely the injuries faced by Rochester Drug Co-Op if the Court does not enjoin Hiscox from breaching its duty to advance Rochester Drug Co-Op's current and ongoing defense costs between now and the conclusion of the March 20 trial.

The Company's counsel estimates that it will need to spend approximately ██████ in fees and costs each month, between now and the conclusion of the March 20 trial, ████████████████████████████████████████████████ Shaiman Decl. ¶ 40.   Allegaert Berger & Vogel LLP ("ABV") represents Rochester Drug Co-Op in the NY Opioid Litigations.   Shaiman Decl. ¶ 6.   ABV's monthly estimate includes ██████████████████████████ ██████████████████████████████[2] *Id.*

████████████████████████  To date, Rochester Drug Co-Op has already paid more than ███████ to the ABV firm to defend the Company in the New York Opioid Litigations.  *Id.* ¶ 37. ██████████████████

Kinney Decl. ¶¶ 12-19. ████████████████████

*Id.* ¶ 14. ████████████████████████

████████████████████ *Id.* ¶¶ 17-18. ██████████

████████████████ *Id.* ¶ 15. ████████████

████████████████████████████████

██████████ *Id.* ¶ 24. ██████████████

████████████████████████ *Id.* ¶¶ 12-26.

████████████████████████

████████████████████████████████

████████████████████████████████



---

[2] In 2018, before issuing its declination of coverage, Hiscox approved Rochester Drug Co-Op's use of the ABV firm and the litigation budget prepared by the ABV firm.  Hiscox agreed to pay the ABV firm's invoices for six months before declining coverage.  *See* Tomovic Dec. ¶ 31.  To date, Hiscox has neither paid anything to the ABV firm nor has it reimbursed Rochester Drug Co-Op for the defense fees the Company has paid.  Shaiman Decl. ¶ 7.

██████████████  *See* Tomovic Decl. ¶ 38.   "The Second Circuit has long recognized that the relationship between a client and the attorney of his or her choice is one that should not be readily disrupted." *Emons Indus., Inc. v. Liberty Mut. Ins. Co.*, 749 F. Supp. 1289, 1292 (S.D.N.Y. 1990).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████  *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978); *see also XL Specialty Ins. Co. v. Level Global Investors, L.P.*, 874 F. Supp. 2d at 274 (finding irreparable injury where insured risked losing his existing counsel in the middle of litigation).   Even worse, ████████████

███████████████████████████████████████████  *See* Kinney Decl. ¶¶ 12-27.

Funding cannot wait until the March 20 trial commences.   Today, ███████████████

████████████████████████████████████████████████  *See* Kinney Decl. ¶¶ 12-26.   Millions of pages of discovery have been exchanged in the NY Opioid Litigations.   Shaiman Decl. ¶ 20.  ██████████████████████████████

████████████████████████████████████████████████████████

███████████████████████  *Id.*  ████████████████████████████

████████████████████████████████████████████████████████

██████████████████  *Id.*  █████████████████████████████████

█████████████████████████████████████████████████  Kinney Decl. ¶ 23.[3]

───────────────────

[3] ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

And within just two weeks, Rochester Drug Co-Operative will be irreparably harmed by

██████████████████████████████████████████████████████████

███████████████    *See* Shaiman Decl. ¶ 5.  ████████████████████████

████████████    *See id.*  ██████████████████████████████████

█████████████████████████████     ████████████████████████

███████████████████████████     *Id.* ¶ 16.  For example, Rochester Drug Co-Op

████████████████████████████████████     *See id.*  Rochester Drug Co-Op

is a small distributor, a co-op of local pharmacies, that is responsible for as little as 0.25% of all

opioids distributed in certain relevant counties.  *See id.* ¶ 16 n.2.  ████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

*See In re Boston Reg'l Med'l Ctr.*, 285 B.R. at 96-97 (concluding inability to retain experts is

irreparable harm); *Freedom Specialty Ins. Co.*, 2017 N.Y. Misc. LEXIS 5165 at *9 (same).

In sum,  ██████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████     The New York Attorney General was blunt in

its assessment of the stakes in this trial—"we face the possibility that RDC will be wiped off the

map" and be "put out of business."  *See* Shaiman Decl. Ex. A at 12.  Hiscox's wrongdoing here

████████████████████████     to a 183-person employer in Rochester that plays a unique role in

serving independent pharmacies throughout the region.  *See* Kinney Decl. ¶¶ 3-4.  Even the New

York Attorney General acknowledged that the Company "serves a public function and interest"

_____

██████████████████████████████████████████████████████████

████████████████████████████████

by providing "competition in the [drug] distribution industry that is otherwise dominated by Cardinal, McKesson, and Amerisource Bergen."  Shaiman Decl. Ex. A at 12.

**B.     Denying this motion may** 

Without the preliminary injunction, the Company may

*First*, the Company faces liabilities at trial that could ruin it.  As the New York Attorney General stated, "we face the possibility that RDC will be wiped off the map" and be "put out of business."  *See id.*

*Second*, the Company may

*See* Kinney Decl. ¶¶ 17-20.

*See id.* ¶ 21.

*See id.*

¶ 22.   On the other hand, a preliminary injunction would translate into reduced expenses and increased profitability.  It signals the potential availability of $6 million (the Hiscox policy limit) in insurance coverage.

*See id.* ¶ 25.

These harms too are, of course, irreparable.  *See, e.g.*, *Texaco Inv. v. Pennzoil Co.*, 784 F.2d 1133, 1153 (2d Cir. 1986) (

); *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24, 28-29 (2d Cir. 1978) ("

██████████████); *USA Network v. Jones Intercable, Inc.,* 704 F. Supp. 488, 491 (S.D.N.Y. 1989)

████████████████████████████████████████████████████████████

██████.

Thus, absent immediate preliminary relief, Rochester Drug Co-Op is likely to suffer irreparable harm that includes (1) ██████████████████████████████

## II.     ROCHESTER DRUG CO-OP IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM

"Courts in this Circuit generally permit a movant who has established irreparable harm to demonstrate *either* 'a likelihood of success on the merits, or . . . sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief." *Bank of Am. v. Yi*, 294 F. Supp. 3d 62, 76 (W.D.N.Y. 2018) (quoting *Able v. United States*, 44 F.3d 128, 130 (2d Cir. 1995)); *see Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). Rochester Drug Co-Op satisfies either standard.

Rochester Drug Co-Op is likely to succeed on the merits because Hiscox's position is contrary to the plain text of the Policy.  Hiscox has disclaimed coverage for the NY Opioid Litigations based on the Final Adjudication Exclusion.  *See* Complaint at Ex. D; Tomovic Decl. ¶ 34.  That provision potentially excludes coverage "for **Loss** in connection with any **Claim** made against any **Insured** . . . arising out of, based upon or attributable to the . . . committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law, if any final adjudication establishes that such deliberate criminal or deliberate fraudulent act, or willful violation of statute, rule or law was committed."  Policy at D&O Coverage Part, IV.A. Hiscox has taken the position that the Deferred Prosecution Agreement and Stipulation are "final

adjudications" and that the NY Opioid Litigations are "arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law." Complaint at Ex. D; *see* Tomovic Decl. ¶ 34.  It is wrong on both points.

> **A.    The Final Adjudication Exclusion cannot apply because there has been no "final adjudication."**

As a threshold matter, there has been no "final adjudication . . . arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act."

The plain meaning of "final adjudication," which is not otherwise defined by the Policy, requires a final judgment of criminality or fraud.  Black's Law Dictionary defines "final" as "not requiring any further judicial action by the court that rendered the judgment to determine the matter litigated."  *Black's Law Dictionary* (10th ed. 2014).  "Adjudication" is defined as "[t]he legal process of resolving a dispute; the process of judicially deciding a case."  *Id.*; *see also Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 572 (5th Cir. 2010) ("[C]ourts have interpreted both 'final adjudication' and 'in fact' to require a judicial decisionmaker."); *First Mercury Ins. Co. v. Law Office of Kenneth B. Schwartz*, No. CV 17-1763, 2019 U.S. Dist. LEXIS 35210, at *45 (E.D.N.Y. Mar. 1, 2019) (conditional guilty plea was not "final adjudication" because party could withdraw it); *Wojtunik v. Kealy*, No. CV-03-2161-PHX-PGR, 2011 U.S. Dist. LEXIS 36229, at *26 (D. Az. Mar. 31, 2011) (settlement is not a "final adjudication" for purposes of insurance policy exclusion); *United States v. Weissman*, 94-cr-760, 1997 U.S. Dist. LEXIS 8540, at 40 (S.D.N.Y. June 13, 1997) (no "final adjudication" in criminal matter until court decides post-trial motions).  By ordinary definition then, the Final Adjudication Clause requires a *judgment* of criminality or fraud.

But neither the Deferred Prosecution Agreement nor the Stipulation is a "final adjudication," because none included any adjudication of criminality or wrongdoing.  Start with the Deferred Prosecution Agreement, entered on April 22, 2019.  A deferred prosecution agreement is a mechanism for *avoiding* any adverse adjudication in a criminal case.  Through a deferred prosecution agreement, "the government agrees to defer prosecution and *ultimately seek dismissal* of all charges if the defendant complies with the DPA."  *United States v. HSBC USA, N.A.*, 863 F.3d 125, 129 (2d Cir. 2017) (emphasis added).  As long as the defendant complies with a deferred prosecution agreement, no adjudication of criminality is ever made.  *See id*.  No judgment is entered with the deferred prosecution agreement.  "[T]he entire object of a DPA is to enable the defendant to *avoid* criminal conviction" so that the "court never exercises its coercive power by entering a judgment of conviction."  *United States v. Fokker Servs. BV,* 818 F.3d 733, 746 (D.C. Cir. 2016) (emphasis in original).

Moreover, under a deferred prosecution agreement, "if the defendant were to fulfill the agreement's conditions, the prosecution would move to dismiss all charges with prejudice at the end of the specified period."  *Id.* at 739; *see also id.* at 743 ("dismissal under a DPA follows from a defendant's adherence to agreed-upon conditions over a specified period").  At that point, the Government enters a *nolle prosequi* with the court.  *See, e.g.*, *United States v. Toyota Motor Corp.*, 278 F. Supp. 3d 811, 814 (S.D.N.Y. 2017).  "A *nolle prosequi* is a unilateral act by a prosecutor, which ends the pending proceedings . . . without placing the defendant in jeopardy."  *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009).  "Whereas a district court enters a judgment of conviction . . . in the case of a plea agreement, the court takes no such action in the case of a DPA."  *Fokker*, 818 F.3d at 746.  "The key point" of a deferred prosecution agreement "is that, although charges remain pending on the court's docket under a DPA, the court plays no role . . . and

defendants who violate the conditions of the FPA face no court-ordered repercussions." *Fokker*, 818 F.3d at 744.

This is how Rochester Drug Co-Op's Deferred Prosecution Agreement works.  Rochester Drug Co-Op waived indictment and consented to the *filing* of criminal charges.  *See* S.D.N.Y. Case No. 1:19-cr-00290-NRB, Dkt. Nos. 2-3.  The Company then *pleaded not guilty* to all those charges.  *Id.*, Minute Entries for proceedings held April 23, 2019.  Under the terms of the Deferred Prosecution Agreement, prosecution was deferred—not completed—and if Rochester Drug Co-Op complies with the terms of the Agreement, then the Government will move to dismiss the charges with prejudice.  *See id.* DPA ¶ 13 ("[I]f RDC is in compliance with all of its obligations under this Agreement, the Office will, within thirty (30) days after the expiration of the period of deferral . . . seek dismissal with prejudice as to RDC of the Information filed against RDC pursuant to this Agreement.").  Unlike a criminal matter following a conviction or plea deal, the deferred prosecution agreement triggered no judgment.  *See* Tomovic Decl. at Ex. 3.  Simply put, there has been no adjudication, and certainly no final adjudication.

The Civil Case brought in parallel to the criminal case also resulted in no judgment. Rochester Drug Co-Op and the Government entered into the "Stipulation and Order of Settlement and Dismissal."  (*See* S.D.N.Y. Case No. 1:19-cv-03568-LAK, Dkt. No. 5.)  That Stipulation is also not a "final adjudication."  In fact, the Stipulation states that the United States may, "at its option, (a) rescind this Stipulation and reinstate the claims asserted against RDC in the Complaint." *See* Stipulation ¶ 4.  It is clear from this provision alone that the Stipulation is not a final adjudication.  But the Stipulation goes further: it also states that, if Rochester Drug Co-Op complies with the terms of the Stipulation, the United States will "release[ Rochester Drug Co-Op] from any civil claim for penalties that the United States has for the Covered Conduct."  *See*

Stipulation ¶ 9.  Even more, the Stipulation provides for the only circumstance in which a judgment would, in fact, be filed—"[i]n the event of an Uncured Default" of the Company's settlement payments.  *See id.* ¶ 4.  And, moreover, the parties attached a consent judgment to be entered if and only if a default occurred.  *See id*.  That judgment has never been docketed.  *See* Tomovic Decl. at Ex. 5.  So, as with the Criminal Case, no judgment has been entered in the Civil Case.  *See id*.

Consequently, neither the Deferred Prosecution Agreement nor the Civil Stipulation was a "final adjudication."  While both contained factual admissions, they were never adopted by any court in any adjudication.  Moreover, even if they had been incorporated by a court—and, again, they were not—no judgment was ever entered, final or otherwise.  *See, e.g., Lifespan Corp. v. Nat'l Union Fire Ins. Co.*, 59 F. Supp. 3d 427, 445 (D.R.I. 2014) (holding that, even where court had made factual findings of fraud, there was no "final adjudication" in the absence of "*a judgment* establishing deliberate fraudulent conduct") (emphasis added).  The very purpose of the Deferred Prosecution Agreement and Stipulation was to avoid such a judgment.  *See, e.g., Fokker*, 818 F.3d at 746 ("the entire object of a DPA is to enable the defendant to *avoid* criminal conviction" such that no "judgment of conviction" is ever entered). There has therefore been no "final adjudication."

Hiscox's contrary construction would expand "final adjudication" into "final adjudication *or admission*."  That more expansive version—adding the "or admission" provision—is, in fact, a common (but broader) exclusion.  *See, e.g., Am. Guar. Liab. Ins. Co. v. Hoeffner*, Civil Action No. H-08-1181, 2009 U.S. Dist. LEXIS 3047, at *8-9 (S.D. Tex. Jan. 16, 2009) (quoting an exclusion extending to "a final adjudication or admission by an Insured"); *Phila. Indemn. Ins. Co. v. Stazac Mgmt., Inc.*, 3:16-cv-369-J-34MCR,  2017 U.S. Dist. LEXIS 45397, at * 3 (M.D. Fla. Jan. 31, 2017) (quoting an exclusion extending to "final adjudication [or] adverse admission"); *B&R*

*Consol. L.L.C. v. Zurich Am. Ins. Co.*, 2011 N.Y. Misc. LEXIS 3014, *12-13 (N.Y. Supt. Ct. June 22, 2011) (quoting an exclusion extending to "a final adjudication or admission"); *Sony Computer Entm't Am., Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1010 (9th Cir. 2008) (quoting an exclusion extending to "final adjudication [or] adverse admission"); *Xtreme Prot. Servs., LLC v. Steadfast Ins. Co.*, 2019 Ill. App. LEXIS 301, at **4 (Ill. App. Ct. May 3, 2019) (quoting an exclusion extending to "a final adjudication or admission"); *Am. Auto. Ins. Co. v. Advest, Inc.*, 08 Civ. 6488, 2009 U.S. Dist. LEXIS 101572, at *6-7 (S.D.N.Y. Oct. 28, 2009) (quoting an exclusion extending to "final adjudication or admission"); *Am. Guar. & Liab. Ins. Co. v. Moskowitz*, 19 Misc. 3d 548, n.* (N.Y. Sup. Ct. Feb. 28, 2009) (quoting an exclusion extending to "a final adjudication or admission"); *Fidelity Nat'l Title Ins. Co. v. Maxum Indem. Co.*, Civil Action No. 16-1360, 2017 U.S. Dist. LEXIS 147133, at *14 n.9 (E.D. Pa. Sept. 12, 2017) (quoting an exclusion extending to "final adjudication, adverse finding of fact, or adverse admission").

Unlike the common policy exclusions quoted parenthetically above, which exclude both "final adjudications" and "admissions," Hiscox's Final Adjudication Exclusion here is clearly limited to "final adjudications" alone.  Coverage under the Policy that Hiscox sold Rochester Drug Co-Op was more robust than the policies quoted above because Hiscox chose not to exclude coverage following a mere "admission."  If Hiscox wants admissions to trigger its exclusions, it can write that policy next time.  But that is not the Policy that the Company bought.  And right now, when Rochester Drug Co-Op needs the coverage it purchased, Hiscox should not be permitted to shirk its obligations by wishing it had drafted its exclusion to specifically include "admissions."  Simply put, the Company's admissions do not implicate the Final Adjudication Exclusion.

**B.**     **The Final Adjudication Exclusion also cannot apply because the NY Opioid Litigations would arise with or without deliberate criminal or fraudulent acts.**

Even if the Deferred Prosecution Agreement and Stipulation were final adjudications (which they are not), there is a second, independent reason the exclusion would not apply—the NY Opioid Litigations are not "arising out of, based upon or attributable to the . . . committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law." Policy at D&O Coverage Part. It does not matter that the Company admitted to engaging in criminal or fraudulent conduct. By precedent, the Final Adjudication Exclusion does not apply, as explained below, unless a cause of action *requires* that underlying crime or fraud. Because that is not the case here, the exclusion does not apply.

Courts apply a "but-for" test when determining whether a claim arises out of or is based upon excluded conduct. *Beazley Ins. Co. v. Ace Am. Am. Ins. Co.*, 197 F. Supp. 3d 616, 627-628 (S.D.N.Y. 2016) ("Under New York law,[4] whether a given claim arises out of or is based upon excluded conduct in a policy exclusion . . . turns on whether the claim could succeed but for the excluded conduct."), *aff'd* 880 F.3d 64 (2d Cir. 2018); *Scottsdale Indem. Co. v. Beckerman*, 120 A.D.3d 1215, 1219 (2d Dep't 2014) (holding that a "but-for test applies to determine the applicability of an arising out of exclusion" such that if "none of the causes of action that [the underlying plaintiff] asserts could exist but for the existence of the excluded activity or state of

---

[4] New York law applies to the claims in this litigation because the insured is a citizen of New York organized under the laws of New York, the insured risk is in New York, the policy was delivered in New York by a New York broker, the NY Opioid Litigations all originated in New York, and the claims underlying the NY Opioid Litigations are all based on activities which originated in New York. *Liberty Surplus Ins. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 67 A.D.3d 420, 420 (1st Dep't 2009); *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 36 A.D.3d 17, 24 (1st Dep't 2006); *Steadfast Ins. Co. v. Sentinel Real Estate Corp.,* 283 A.D.2d 44, 50 (1st Dep't 2001).

affairs, the insurer is under no obligation to defend the action").  Under this case law, the exclusion applies only if a crime or fraud is the "but for" cause of the litigated claim.

That's not the case here.  Every single cause of action in the NY Opioid Litigations alleges claims—such as negligence and public nuisance claims—that may exist without allegations that Rochester Drug Co-Op committed "any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law."  For a public nuisance claim, for example, a plaintiff must prove that the defendant engaged in conduct that "offend[s], interfere[s] with or cause[s] damage to the public in the exercise of rights common to law in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons."  *Copart Indus., Inc. v. Consolidated Edison Co.*, 41 N.Y.2d 564, 568 (N.Y. 1977).  A public nuisance claim can therefore exist without (i.e., "but-for") any allegation of deliberate criminal or fraudulent conduct or a willful violation of any statute.  The same is true of negligence claims.  *Elmaliach v. Bank of China Ltd.*, 110 A.D.3d 192, 199 (1st Dept 2013) (stating that elements of negligence are duty, breach, damages, causation, and foreseeability).

Because the NY Opioid Litigation causes of actions would be actionable regardless of whether the Company engaged in a fraud or crime, those claims are not claims "arising out of, based upon or attributable to the . . . committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law."  For this reason too, then, the Final Adjudication Exclusion does not apply.

**C.    Hiscox chose not to define "final adjudication" or "arising out of," and any ambiguity must be construed in favor of Rochester Drug Co-Op.**

Hiscox clearly cannot disclaim coverage for the NY Opioid Litigations based on the Final Adjudication Exclusion.   But even if this Court determines that the policy language is ambiguous—rather than clearly inapplicable—Rochester Drug Co-Op would still succeed on the merits.

It is Hiscox as the insurer—not Rochester Drug Co-Op—that bears the burden of demonstrating that the Final Adjudication Exclusion unequivocally applies here to bar *all* coverage.  *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984) (insurer bears burden of proving policy exclusion applies).  Even more, any ambiguity "must be construed against the insurer."  *Yale Club of New York City, Inc. v. Reliance Ins. Co. in Liquidation*, 55 A.D.3d 43, 44 (1st Dep't 2008), *aff'd* 12 N.Y.3d 725 (N.Y. 2009).   "[W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in 'clear and unmistakable' language. Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation."  *Seaboard Surety Co.*, 64 N.Y.2d at 311 (internal quotations and citations omitted).  An insurance provision is ambiguous if it "may be reasonably interpreted in two conflicting manners."  *Mostow v. State Farm Ins. Co.*, 88 N.Y.2d 321, 326 (N.Y. 1996).

Because Rochester Drug Co-Op's reading of the Final Adjudication Exclusion—that it does not apply to the Stipulation or Deferred Prosecution Agreement—is a reasonable interpretation, the Company has clearly established its likelihood of success on the merits.

*Alexander Mfg. v. Ill. Union Ins. Co.*, 666 F. Supp. 2d 1185, 1200 (D. Or. 2009) (construing ambiguity against drafter and concluding that "final adjudication" refers to final outcome of a case, not decision during the course of a case).

## III.   AT A MINIMUM, ROCHESTER DRUG CO-OP HAS PRESENTED SUFFICIENTLY SERIOUS QUESTIONS AS TO THE MERITS AND A BALANCE OF HARDSHIPS TIP IN ITS FAVOR.

In addition to demonstrating that Rochester Drug Co-Op is likely to succeed on the merits of its claims, the Company also meets the alternative preliminary-injunction test—it has shown sufficiently serious questions going to the merits of its claim and a balance of hardships tipping decidedly in its favor.

At a minimum, there plainly is a plausible, serious argument that Hiscox has wrongfully disclaimed coverage for the NY Opioid Litigations.  As for hardships, those hardships that may befall Rochester Drug Co-Op if the Court does not grant this preliminary injunction include ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████  The only "hardship" that may befall Hiscox is a monetary obligation in the amount of the few months of defense costs that it will pay in the interim.[5]  The hardships tip decidedly in favor of the movant here.  *See XL Specialty Ins. Co.*, 874 F. Supp. 2d at 276 (holding that balance of hardships decisively favors an insured where insured risks losing its counsel or being able to mount an effective defense without payment by the insurer, which may only face monetary adverse consequences).

---

[5] In order to minimize any potential risk for Hiscox, Rochester Drug Co-Op would agree to an expedited discovery schedule to allow this action to be resolved expeditiously on motions for summary judgment.

## IV.  GRANTING THE MOTION IS IN THE PUBLIC INTEREST.

"Finally, . . . to the extent it is implicated, the public interest here is served by the enforcement of the parties' lawful agreement."  *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 897 (2d Cir. 2015) (quotation marks omitted).   "There is a well-recognized public interest in enforcing contracts and upholding the rule of law."  *Bank of America, N.A. v. Yi*, 294 F. Supp. 3d 62, 81 (W.D.N.Y. 2018) (internal quotation marks and citations omitted).  "The public has an interest in seeing that parties oblige by their contractual obligations and are not allowed to skirt such obligations at another's expense."  *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010); *see Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F. 3d 535, 551 (6th Cir. 2007) ("Enforcement of contractual duties is in the public interest.").  "All that the Court is being asked to do" here "is to enforce the parties' bargained-for right."  *Id.*

Granting this preliminary injunction would ensure that Hiscox abides by its contractual obligations to Rochester Drug Co-Op, and that Rochester Drug Co-Op can ███████████ ███████████████████████████  To hold otherwise would incentivize insurance companies to deny coverage to insureds that are █████████████████████████████████ ████████████████████████████  This cannot be in the public interest.  *Juergensen Def. Corp. v. Carleton Techs., Inc.*, 08-CV-959A, 2010 U.S. Dist. LEXIS 65540, at *45 (W.D.N.Y. June 21, 2010) ("refusing to let parties to a contract . . . ignore their voluntary obligations based on convenience" is in the public interest); *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010) (granting injunction where "[a]ll that the Court is being asked to do is to enforce the parties' bargained-for right," noting that "[t]he public has an interest in seeing that parties oblige by their contractual obligations and are not allowed to skirt such

obligations at another's expense.").  Nor can it be in the public interest for Rochester Drug Co-Op

████████████████████████████████████████████████████████████████████ because

of an insurance company's failure to timely pay.  After all, what would be the point of insurance,

then?  *See Nu-Way Envtl. v. Planet Ins.*, 95 Civ. 573 (HB), 1997 U.S. Dist. LEXIS 11884, at *7

("without contemporaneous payment of defense costs the insurance would not truly protect the

insureds from financial harm caused by suits against them") (internal quotation marks and citation

omitted).

## V.     THE COURT SHOULD REQUIRE NO BOND OR, IN THE ALTERNATIVE, A MINIMAL BOND.

It is well established in the Second Circuit that Rule 65(c) vests in the district courts wide

discretion as to the amount of security required, if any.  *See Doctor's Assocs. v. Distajo*, 107 F.3d

126, 136 (2d Cir. 1997); *DeWitt Stern Grp., Inc. v. Eisenberg*, 13 Civ. 3060 (RWS),2013 U.S.

Dist. LEXIS 78598, at *16-*17 (S.D.N.Y. June 4, 2013) (finding bond requirement unnecessary).

Rochester Drug Co-Op respectfully submits that the Court should exercise its discretion to

dispense with the filing of a bond in this case.  Requiring Rochester Drug Co-Op to post a

substantial bond would ██████████████████████████████████████████

████████████████████████████████████████████

CONCLUSION

Rochester Drug Co-Op is likely to suffer irreparable harm, █████████████ ████████████████████ if the Court does not grant this injunctive relief.  Importantly, Rochester Drug Co-Op has also established it is likely to succeed on the merits of its claim because Hiscox has improperly disclaimed coverage based on the Final Adjudication Exclusion. Finally, it is beyond dispute that the public interest is served by requiring an insurer to comply with the obligations set forth in a policy that it issued.  Accordingly, Rochester Drug Co-Op respectfully request that this Court enjoin Hiscox from breaching its contract with it by refusing to fund Rochester Drug Co-Op's legal defense in the NY Opioid Litigations.

Dated:  January 21, 2020
      Buffalo, New York

                HARTER SECREST & EMERY LLP

                By:  /s/ Lauren R. Mendolera
                    Patrick M. Tomovic
                    Lauren R. Mendolera
                    *Attorneys for Plaintiff*
                    50 Fountain Plaza, Suite 1000
                    Buffalo, New York 14202
                    Telephone: (716) 853-1616